[Crim. No. 7656. Second Dist., Div. Three. Dec. 20, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT LE-
ROY BIEHLER et al., Defendants and Appellants.

Robert Leroy Biehler, in pro. per., and Bertram H. Ross, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Appeals from judgments of convictions of mutiple offenses of robbery and burglary. An amended information was filed against appellants Robert Leroy Biehler and Ray McCoy Bradley, together with two other defendants,

William Arnole Rainbolt, Jr., and Roy Justino Andrade, charging the following:

In Count I, Rainbolt and Biehler were charged with the robbery, on August 9, 1960, of the Boysburger Café. It was charged that Rainbolt was armed at the time with a revolver, and Biehler with a shotgun and a revolver. Biehler was, in addition, charged with a prior conviction of robbery.

In Count II, Rainbolt and Bradley were charged with the armed robbery, on August 1, 1960, of the Gaye Motel.

In Count III, Rainbolt was charged with the armed robbery, on August 4, 1960, of Paul's Liquor Store.

In Count IV, Biehler was charged with the burglary on August 3, 1960, of Uncle Fred's Swap Shop.

In Count V, Rainbolt and Andrade were charged with the armed robbery, on August 12, 1960, of the Signal Trucking Service. In addition, Andrade was charged with prior convictions of forgery and grand theft.

The information was an amendment of a prior information wherein the charges set out in Counts I through III were made against Rainbolt alone. The amended information represented a consolidation of the original information against Rainbolt and four other informations, two of which charged Biehler alone with the matters set out in Counts I and IV of the amended information; one of which charged Bradley alone with the crime set out in Count II of the amended information; and one of which charged Rainbolt and Andrade with the substance of Count V of the amended information. The original informations were all consolidated into the amended information, on motion of the district attorney, and over the objection of all defendants. The defendants then moved for a severance of their trials on the charges contained in the amended information. The objection to consolidation and the motion for severance were made on the ground that the five counts of the amended information all related to unconnected crimes, and that the effect of a consolidated trial of all of the offenses would be to unfairly prejudice the jury against the defendants. The People opposed the motions for severance on the ground that a common purpose underlay all the crimes charged, and that some of the weapons taken in the burglary were used in the robberies. The court denied the motions for severance, and a single jury trial was had on all five counts. All defendants were found guilty as charged, with the single exception that Bradley was found to have been unarmed at the time of the commission of the offense charged

in Count II. Bradley appeals on the ground that as a result of the consolidation of the various charges he was unable to have a fair trial. Biehler appeals on that ground, on the additional grounds that the evidence was insufficient to sustain the verdict, that the court failed to properly admonish the jury according to section 1122 of the Penal Code, and that the jurors were guilty of misconduct. For the reasons which follow, the judgments must be reversed.

The principles governing the consolidation of distinct offenses into one information or indictment are set forth in Penal Code section 954: ''An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts . . . .'' That section further provides ''. . . the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately.''

 Since robbery and burglary are of the ''same class of crimes,'' within the meaning of section 954 (*People* v. *Johnston*, 114 Cal.App. 241, 244 [299 P. 805]), the consolidation as occurred in the instant case fell within the provision for consolidation of ''two or more different offenses of the same class of crimes or offenses.'' However, compliance with the section in that respect is an insufficient test whether a consolidated information and trial are proper in all cases. Otherwise, every single person charged with a specific crime could be required to stand trial with any number of other defendants charged with independent, unrelated crimes of the same class. On the other hand, the state is not required to hold a separate trial for every single offense charged against every individual defendant. However, it is unnecessary for this court to determine the outer limit to the consolidation permitted under section 954, since that limit has been drawn short of the consolidation attempted in the instant case.

In the case of *People* v. *Davis*, 42 Cal.App.2d 70, 74 [108 P.2d 85], it was held that where ''The crimes charged were separate and distinct crimes, occurring at different times, against different persons and were charged against different defendants,'' they may not be joined in a single indictment. In the *Davis* case, the facts were as follows: The defendants ''A'' and ''B'' were charged in an indictment with the rob-

bery of a drugstore alleged to have been committed December 23, 1939. The same defendants were charged, in a separate indictment, with another and distinct robbery alleged to have been committed on January 14, 1940. In a third indictment the defendants "B" and "C" were charged with a further separate and distinct robbery alleged to have been committed on January 12, 1940. These indictments were consolidated for trial, over the objection of the defendant "A." At trial, the defendant "C" pleaded guilty to the robbery charged in the third indictment; the court directed a verdict of acquittal as to both defendants charged in the second indictment; and directed a verdict of acquittal as to the defendant "B" with respect to the charge against him in the first indictment. Thus, there remained but two charges for the determination of the jury: the charge against the defendant "A" in the first indictment, and the charge against the defendant "B" in the third indictment. The jury returned verdicts of guilty as to both defendants, and the defendant "A" appealed. ▮ Reversing the judgment of conviction, the court quoted the United States Supreme Court, in *McElroy* v. *United States,* 164 U.S. 76 [17 S.Ct. 31, 41 L.Ed. 355]: "While the general rule is that counts for several felonies of the same general nature, requiring the same mode of trial and punishment, may be joined in the same indictment, subject to the power of the court to quash the indictment or to compel an election, such joinder cannot be sustained where the parties are not the same and where the offenses are in nowise parts of the same transaction and must depend upon evidence of a different state of facts as to each or some of them," and further approved the statement in the *McElroy* case that "The order of consolidation was not authorized by statute and did not rest in mere discretion." Considering the effect of California Constitution, article VI, section 4½, the *Davis* court said "It would seem to us that in the very nature of things the consolidation of such separate unconnected charges for trial could not help but be prejudicial to either or both defendants."

The principles enunciated in *Davis* have been reasserted in subsequent decisions by the reviewing courts of this state. In *People* v. *Duane,* 21 Cal.2d 71 [130 P.2d 123], at page 76, the court stated: "A defendant may be prejudiced if forced to stand trial on one charge with a codefendant or codefendants who are charged with a distinct and unconnected offense. The charges may be of the same class and therefore

subject to consolidation, but if unconnected and dependent upon evidence of an entirely different state of facts, one defendant may be prejudiced by evidence introduced in support of an information charging a second defendant with a separate offense.'' The court there held the doctrine inapplicable to the facts of that case, since but one defendant was tried. In *People* v. *O'Leary,* 130 Cal.App.2d 430 [278 P.2d 933], the appellant and a codefendant were charged in one count of an information with robbery; in another count the codefendant and a third defendant were charged with a separate and distinct robbery; and in a further count, the third defendant was charged with still another robbery. The two defendants other than the appellant pleaded guilty, and the only evidence introduced at trial related to the single offense of which the appellant was charged. The appellant contended on appeal that ''there is no authority of law for joining in a single indictment, or trial, charges against several individuals accused of having committed separate unconnected crimes at different times and upon different people,'' and cited the *Davis* case to that effect. The court agreed with the proposition, but held that the appellant could not have been prejudiced by the joint information, under the facts of that case, stating: ''If the three defendants had gone to trial and evidence had been introduced in support of the allegation of the information [appellant's] contention would have been sustainable for reasons which were stated fully in *People* v. *Davis, supra,* and cases therein cited. But O'Leary and Weaver, out of the presence of the jury, pleaded guilty; no evidence was produced on behalf of the People with respect to their crimes.'' (*People* v. *O'Leary, supra,* pp. 437-438.)

The case of *People* v. *Andrews,* 165 Cal.App.2d 626 [332 P.2d 408], relied upon by the Attorney General, does not establish a different rule from that set forth in the *Davis* case. There the appellants were all employed as truck drivers for a company engaged in the business of rendering meat byproducts into usable commodities. Their duties consisted of picking up these products from markets located on routes served by the drivers. They were accused in a single indictment of falsifying their records so as to overcredit certain markets regarding the quantity of products picked up, and undercredit others, all of which was part of a scheme whereby they received ''kick-backs'' from the favored markets. The drivers were charged with theft as to the substantive crimes, and with conspiracy to effect the thefts. They were found

guilty of the substantive crimes, but not guilty of the conspiracy. The court applied the principles stated in *Davis,* but stressed the statement in *People* v. *Duane, supra,* 21 Cal. 2d 71, (which, in turn, was based upon language in *McElroy, supra*) that a defendant may be prejudiced by such joinder ''only if the evidence of the commission of separate offenses is dependent upon 'an entirely different state of facts.' ''

The *Andrews* decision further relied on the case of *In re Pearson,* 30 Cal.2d 871 [186 P.2d 401], where it was stated that joinder of multiple offenses is permissible ''if there is a common element of substantial importance in their commission.'' Setting forth the rather unique nature of the crimes charged, and their common elements, the court held that the requisite ''common element of substantial importance'' and the common ''state of facts'' justifying joinder were present. However, those common elements which in *Andrews* justified a single trial were similarly the elements which justified the conspiracy indictment in that case; and indeed it seems reasonable that where the evidence is sufficient to justify a conspiracy charge, the substantive crimes alleged to have been committed pursuant to the conspiracy may be joined in a single complaint even though multiple defendants are charged.

Other cases holding proper the consolidation for trial of distinct offenses charged against separate defendants have found the ''common element'' requirement satisfied when the crimes charged arose out of a single set of circumstances, (*People* v. *Flores,* 62 Cal.App.2d 700 [145 P.2d 318], *People* v. *Nasworthy,* 94 Cal.App.2d 85 [210 P.2d 83]), or a closely related and singular pattern of conduct (*People* v. *Chapman,* 52 Cal.2d 95 [338 P.2d 428], *People* v. *Burton,* 91 Cal.App. 2d 695 [205 P.2d 1065], *People* v. *Cohen,* 107 Cal.App.2d 334 [237 P.2d 301]).

The development of the law in the federal courts, commencing with the *McElroy* case, has paralleled the development in California. In the case of *Ingram* v. *United States* (4th Cir. 1959) 272 F.2d 567, the appellant and four other defendants were charged in one indictment with the possession of nontax-paid liquor, and in another indictment the appellant was charged, together with two other defendants (neither of whom was named in the first indictment) with another and separate instance of the same offense. The court held that the consolidation for trial of the two indictments was prohibited under the rule enunciated in the *McElroy* case, and in answer to the government's contention that such

joinder was permissible within the discretion of the trial judge, stated: ". . . where multiple defendants are charged with offenses in no way connected, and are tried together, they are prejudiced by that very fact, and the trial judge has no discretion to deny relief." This language was quoted and the principle expressed therein was followed in *Ward* v. *United States* (C.A., D.C. 1961) 289 F.2d 877, wherein the court reversed a conviction based upon a single indictment in which the appellant was individually charged in Counts I through III with narcotics violations, and in Counts IV through VI with similar offenses, but wherein a codefendant was also charged, and wherein in Count VII of the same indictment the codefendant was charged with another similar offense.

Apparently, the most recent opinion of the United States Supreme Court on this subject is the case of *Schaffer* v. *United States*, 362 U.S. 511 [80 S.Ct. 945, 4 L.Ed.2d 921]. There the defendants "A" and the defendants "B" were charged in Count I of an indictment with transporting stolen ladies' and children's wearing apparel from New York to Pennsylvania; in Count II of the indictment the defendants "A" and the defendant "C" were charged with a similar movement of stolen goods from New York to West Virginia; and in Count III the defendants "A" and the defendant "D" were charged with the same offense except that the shipment was from New York to Massachusetts. The fourth and final count of the indictment charged all of the defendants with a conspiracy to commit the aforementioned substantive offenses. A single trial ensued, wherein at the close of the government's case the court dismissed the conspiracy count for failure of proof. The defendants were all otherwise convicted as charged upon submission of the substantive counts to the jury. In deciding that joinder was proper, the court distinguished *McElroy* on the ground that in that case "no count linked all the defendants and all the offenses."

It is of no moment that the federal rule governing the joinder of offenses in the federal courts is worded differently from California Penal Code section 954,[1] since the *Davis* and *Duane* cases have incorporated the same standards set forth in the federal cases.

---

[1] Federal Rule of Criminal Procedure 8(b) (18 U.S.C.A.) states, in relevant part: "Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."

■ Of course, the vices inherent in a mass trial such as was had in the instant case are the danger that the jury will find one or more defendants guilty as charged because of his association with evil men; and that the jury will, because of the sheer bulk of the evidence, be unable to separate in their minds the evidence which is properly admissible as to each offense. In *United States* v. *McElroy, supra*, the court noted: "In cases of felony, the multiplication of distinct charges has been considered so objectionable as tending to confound the accused in his defense, or to prejudice him as to his challenges, in the matter of being held out to be habitually criminal, in the distraction of the attention of the jury, or otherwise, that it is the settled rule in England and in many of our states, to confine the indictment to one distinct offense or restrict the evidence to one transaction." (164 U.S. at p. 80.) In *United States* v. *Haupt* (7th Cir. 1943) 136 F.2d 661, at page 674, the court referred to the task of a jury trying consolidated charges "which had to keep separated in its mind the involvement of the various defendants in the numerous overt acts, to eliminate from the incriminating statements those parts which involved defendants other than the one against whom such statement was admitted. . . ." and held that in view of the insurmountable problem so presented a consolidated trial was error. (See also 68 Harv. L. Rev. 1046, 1047 and 36 Colum. L. Rev. 1359-1360.)

■ To illustrate the danger of finding guilt by association, by reason of the consolidation of the charges, and the burden thereby placed on the jury to classify and weigh the evidence according to its admissibility both with respect to the proper defendant and the proper count, it is necessary merely to summarize the evidence received in the case. At best it would show a bewildering conglomeration of unrelated facts which could not have failed to confuse the jurors if they attempted the intricate mental processes that would have been involved in segregating the evidence and limiting it to the particular issues and against the particular defendants as to which it was to be considered. It was too much to expect of jurors that they could put out of their minds the great mass of evidence which led so directly to the conclusion that the defendants were all evil and criminally inclined.

Deputy Sheriff Jones testified that Rainbolt confessed to having committed the crimes charged in Counts I through III. In Rainbolt's statement, Biehler was named as taking part in the robbery charged in Count I and Bradley was named

as taking part in all three of the robberies. Jones then testified that Bradley was brought into the room with Rainbolt, whereupon, in his presence, Jones read back Rainbolt's statement. After Jones finished reading the statement, Bradley said "Is that all?" Jones stated "Isn't that enough?" and Bradley said "Yes, it's too much." Bradley then turned to Rainbolt and said, "Bill, for God's sake, you've said enough. Don't say any more."

Jones then testified that a tape recording was made of a subsequent interview wherein Rainbolt described in detail the crimes alleged in all of the robbery counts. This conversation was transcribed into writing and Jones, after testifying that the transcription was accurate, read it to the jury. This interview took place out of the hearing of any of the other defendants. Bradley was implicated by Rainbolt as having driven the getaway car in all of the robberies, and Biehler was implicated as a participant in the robberies charged both in Count I and in Count IV. In addition, Rainbolt confessed to having committed two other crimes not charged in the information, the robbery of two automobiles wherein both Biehler and Bradley participated. He further stated that the robbery charged in Count IV was "set up" by Biehler.

Sergeant Anderson of the Vernon Police Department testified that Rainbolt explained to him the details of the robbery charged in Count V, as well as of the robberies of the automobiles which took place the day before the Count V robbery. Biehler and Bradley were again both implicated in those robberies.

Sergeant Jones testified that Andrade made a statement to him setting forth the details of the Count V robbery. Bradley, Biehler and Rainbolt were implicated as having taken part in that robbery. Also Sergeant Anderson testified that he interrogated Andrade about that robbery, in the course of which Andrade made a complete statement describing the robbery. All the defendants were implicated by this statement as having participated in the Count V robbery. This statement was recorded by tape recorder, and Sergeant Anderson transcribed the recording into a written record and testified from that record.

Jones testified that after Rainbolt made his statement incriminating Bradley, in the latter's presence, Bradley confessed to having participated in the robbery charged in Count II. Bradley implicated both Rainbolt and Biehler in that robbery.

Sergeant Jones testified that Biehler admitted his involvement in the robbery charged in Count I, and implicated Rainbolt and Bradley therein. Biehler stated that he always wore a mask on his "jobs." He also admitted having committed the burglary charged in Count IV, and stated that he took two .38 revolvers and a shotgun. Biehler told Jones that he used a shotgun in the Count I robbery, and when asked if that shotgun was the one taken in the Count IV burglary, he "just shrugged his shoulders."

Dolores Brandt testified that during August 1960 she shared an apartment with Biehler's former wife; on August 24th or 25th she had a conversation at that apartment with Biehler, during which Biehler stated that he had planned and been involved in a robbery together with Andrade and a person named by him as "the kid." (Rainbolt was known as "the kid" by all three of his codefendants.)

Three victims of the robbery charged in the first count described that robbery, and two of those witnesses identified Rainbolt as an active participant therein. One of the witnesses testified that Biehler resembled, as to height and body build, a second participant who carried a shotgun, and another witness testified that Biehler was of the same height as one of the participants, who was armed with a shotgun. According to all three witnesses, the man armed with a shotgun also wore a mask.

The victim of the robbery charged in Count II described that robbery, and identified Rainbolt as the sole participant therein. Similarly, the victim of the robbery charged in Count III testified, identifying Rainbolt as the sole participant. The victim of the Count V robbery testified, describing that offense, and identified Rainbolt as an active participant. She saw one other participant in this robbery, but as to his identity could remember only that he had a dark complexion and a mustache.

The victim of the burglary charged in Count IV testified to the corpus delicti of the crime, and that two .38 revolvers and a .16 gauge shotgun were found missing from his store after the burglary. A fingerprint expert testified that Biehler's print was on a piece of broken glass which was found underneath the window which was broken during the night when the burglary occurred. Biehler's defense consisted of testimony of his mother and his former wife that he was with them on the night of the robbery charged in Count I, and testimony of his former wife that he was with

her alone, the night of the burglary. It appeared from Biehler's testimony that Fred's Swap Shop (the store that was burglarized) is located on the corner of the street where Biehler lived, that Biehler was therefore frequently in the vicinity of that shop, and that he had entered the shop for a business purpose some months prior to the burglary. Biehler also testified that he did not commit the crimes charged against him, and that he had not admitted any participation in those crimes to the police. Bradley testified that he was beaten by the police and that he confessed participating in the robbery charged in Count II only to avoid further physical abuse. He testified that he was at his brother's former wife's home at the time of the Count II robbery. Rainbolt testified that he was mistreated by the police and would not have made any statements but for that fact. Andrade denied having committed the crimes charged against him, and testified that he admitted his participation in the crime charged in Count V only because of the promise of the police to see that he got off free or merely with probation. On rebuttal, the police officers denied mistreating the defendants and denied making any offers of leniency.

As to all of the evidence of the People above mentioned, the court properly instructed the jury with respect to the crimes as to which it was admissible, as well as the defendants against whom it was admissible.

The Attorney General takes the position that consolidation of the charges was within the discretion of the trial court; that even if the consolidation was improper under the principle of the *Davis* case, it was not in this case prejudicial. Finally the Attorney General emphasizes that portion of the language in the *Davis* and *Duane* cases which prohibits consolidation of charges against different defendants only when the charges are unconnected. Thus, the Attorney General implies that the charges in the instant case were connected.

There is in the instant case, however, no permissible inference that the crimes charged were connected. The People did not, by a conspiracy charge, allege that any of the five counts were connected; they did not attempt to prove that they were connected. None of the evidence of the eye witnesses to the crimes charged tended to show any connection between any of the offenses. The only evidence from which an inference of connection could arise was the fact that Rainbolt was a common participant in all four of the robberies. This, how-

ever, was not a basis for consolidation. (See, e.g., *People* v. *Davis, supra.*) Certainly the fact that four of the five crimes charged were robberies is not such a common factor as to permit consolidation. Of course, the various statements of the defendants were insufficient to show any common scheme since they were, and could only have been admitted against the defendants who made the respective statements. Even Rainbolt's statement in Bradley's presence wherein Bradley was implicated in the crimes charged in Counts I through III was wholly irrelevant as against Bradley with respect to Counts I and III, since Bradley was not charged with those offenses. At the commencement of trial the district attorney expressed his view that some of the weapons taken in the burglary charged in Count IV were used in the robberies, but the only evidence that such was the case was Biehler's purported shrug of his shoulders when asked if the shotgun taken in the burglary was used in the Count I robbery. Considering the evidence that was brought out at trial we cannot find any connection between the five crimes charged sufficient to justify their consolidation under the principles expressed above, and, accordingly the trial court had no discretion to do so. The remaining question, therefore, is whether despite the improper consolidation the defendants were not prejudiced thereby.

In properly separated trials, Biehler and Rainbolt could have been tried together for the crime charged in Count I, Bradley and Rainbolt could have been tried together for the robbery charged in Count II, and Biehler could have been tried alone for the burglary charged in Count IV. In none of these trials would any evidence relative to the crime charged in Count V of the information in this case have been admissible. Those portions of Rainbolt's statements which described the offenses charged in Counts I and III would have been inadmissible in the trial under Count II, and similarly those portions relative to the offenses charged in Counts II and III would not have been admitted in the trial under Count I. A total of six robbery victims testified describing the offenses charged in Counts I, II, III and V of the information in this case. In properly separated trials three of these victims would testify at the trial of the offense charged in Count I, and but one each would testify relative to the offenses of Counts II and III. Bradley's statement describing the offense charged in Count II would have been restricted to the trial under that count. Biehler's confession would have been

restricted to the trials under the offenses charged in Counts I and IV.

We cannot doubt that serious prejudice resulted to the appellants because of the consolidation which resulted in the massing of all of the evidence described above in one trial. Although the trial court was careful to keep the jury advised regarding the restricted purpose for which each quantum of evidence was admitted, still we believe that it was practically impossible for the jurors to properly segregate this evidence in their determination of the issues of guilt under each count. Furthermore, it is difficult to avoid the belief that the jury might have formed the impression on the basis of the totality of the evidence that the defendants were a gang of depraved robbers, and based their determination of individual guilt as to each offense partly upon this impression. Of course, this danger may exist to some extent in cases wherein several charges are properly charged against one defendant, or in cases wherein several defendants are all properly charged jointly with the same offenses. However, this fact does not justify magnification of the harm by a further extension of the limits to such procedure. Article VI, section 4½ of the California Constitution does not authorize affirmance in the face of improper procedure which in all probability deprived the accused of a fair and impartial trial.

The problem goes far beyond the question of the sufficiency of the evidence to prove the guilt of Biehler and Bradley. We cannot speculate whether they would have been convicted in trials free from the errors of procedure which invalidate the present judgments. They did not receive a fair trial. It is unnecessary to discuss other contentions of Biehler.

The judgments are reversed.

Vallée, J., and Ford, J., concurred.