[Crim. No. 9995.   Second Dist., Div. Two.   Aug. 16, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS LUGO JUSTINIANO, Defendant and Appellant.

H. F. Poyet for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and C. Anthony Collins, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendant appeals from the judgment entered against him following a nonjury trial which resulted in his conviction of the crime of possessing marijuana.[1]

This appeal presents no question which has any substantial bearing upon the issue of appellant's guilt or innocence. His guilt has been established beyond all doubt and is unquestioned.

By way of assignment of error, appellant argues that the narcotics which were received in evidence as proof of his guilt were the fruits of an illegal search and seizure. He also advances the contention that his free and voluntary statements made *after the discovery and seizure of the narcotics,* with reference to their source and the manner in which they came into his possession, were obtained in violation of his constitutional rights. He argues that in receiving evidence of these statements, the trial court committed error so prejudicial as to demand reversal. Sound law dictates a rejection of both assignments of error and an affirmance of the judgment.

### Legality of the Search and Seizure

Vincent Maga, a Los Angeles police officer attached to the narcotics division, testified that he handled all narcotic complaints in the Hollenbeck area. Three calls from unknown females had been received wherein complaints were made of activities which had been observed in the vicinity of a bar located approximately a half a block from the Catholic school attended by children of the complaining parents. One woman in particular described how she had seen a male of Mexican descent meet people in front of the bar, go to the rear of the bar, and engage in "a package and money transaction."

Officer Maga testified that in response to these calls, he and a fellow officer established an observation point from which they could watch the street corner in front of the bar. At about 2:20 p.m. on January 3, 1964, they observed appellant and two other males of Mexican descent meet in front of the bar, converse, and then walk to the rear of the bar. The officers thereupon drove to the rear entrance to the bar and into the adjacent parking lot. The three described persons immediately separated and began to walk away in different directions.

Officer Maga parked his vehicle, approached appellant, identified himself as a police officer conducting a narcotic

---

[1] A violation of section 11530 of the Health and Safety Code.

investigation, and asked appellant if he had narcotics on his person. Appellant said "No." Officer Maga asked, "Do you mind if I search you?" and appellant replied, "No, go ahead if you want to." The search of appellant's person which followed revealed a bag of pills resembling benzedrine and a marijuana cigarette.

The recited evidence constituted a more than ample basis for the trial court's finding that the search which preceded appellant's arrest was reasonably made with his free and voluntary consent. Hence, the search and the seizure of the contraband found in appellant's possession were in all respects legal and proper.

■ It is fundamental that where consent to a search is given, there is no violation of the constitutional rights of the person searched, and evidence obtained in such a search is admissible. (*People* v. *Burke*, 47 Cal.2d 45, 49 [301 P.2d 241]; *People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852].) "Since evidence on the issue of the voluntary nature and the time of . . . [appellant's] consent conflicted, and since substantial evidence supports the trial court's finding that the search preceded the arrest and that the consent was otherwise voluntary, we must accept that decision. [Citations.]" (*People* v. *Bilderbach*, 62 Cal.2d 757, 762-763 [44 Cal.Rptr. 313, 401 P.2d 921].)

### *Effect of Appellant's Statements re Source of Supply*

■ Following Officer Maga's testimony concerning the discovery of the narcotics, the following questions and answers are reported: "Q. After you removed these items from the defendant's pocket, sir, did you hold a conversation with him regarding them? A. I did. Q. Did that take place at that location? A. At that location and on the way to the station. Q. After you found these items, did you place the defendant under arrest? A. I placed the defendant under arrest after I found the pills, yes, sir. Q. And who was present during the course of your conversations with the defendant regarding these items? A. Sgt. Leeds. Q. And the defendant and yourself? A. Yes, sir. Q. Were any statements made by the defendant, were they made to you freely and voluntarily? A. They were. Q. Would you relate the—— Mr. James [appellant's counsel]: I have no objection to the conversation coming in, subject to a motion to strike, if the corpus isn't proved, your Honor. The Court: Very well.

"Q. Relate the conversation. A. I asked him where he got the marijuana, and he says he bought the pot from a guy on

the street, and he paid $7 for it. I says, 'Is that all you got for $7?' He said, 'No, I got more than that, but I like to smoke it', and I asked him about the pills, and he says, 'I bought the Benzies from a guy on the street, too.' That is about the extent of the conversation.''

We hold that the decisions in *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], lend no support to appellant's contentions. This conclusion is fortified by later decisions of the same and other courts interpreting these decisions and applying the principles enunciated therein.

It has been made clear that the basic purposes of *Escobedo* and *Dorado* were (1) to prevent police reliance upon improperly induced confessions as a substitute for independent investigation and proper accumulation of evidence; and (2) to condemn and discourage resort to confessions obtained by coercive methods violative of the constitutional rights of the accused. The importance of these considerations has been particularly stressed in the decision of *In re Lopez,* 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380].

Neither of these considerations has the remotest bearing upon the present factual picture. Every necessary and proper step in the process of investigation and accumulation of evidence pertinent to the crime here involved had been completed by the officers, and, quite obviously, the query directed to appellant as to the *source* of the contraband was not designed as a substitute for diligent police work. Here there was neither the slightest need for the resort to any coercion nor the remotest possibility that it would produce anything essential to appellant's conviction. In point of fact, it would appear that the officers were not even motivated in asking their questions by any desire to elicit a confession. It would add practically nothing to the ''open and shut'' case they already had established by unquestionably proper police methods.

We believe that a rational and realistic view of these facts compels the conclusion that the true and proper motive of these officers was to break through the wall which separates the innumerable arrests of narcotics users from their relatively immune suppliers. As is so well known, the ingenuity of these suppliers has made this wall almost impenetrable.

In *People* v. *Modesto,* 62 Cal.2d 436, 446 [42 Cal.Rptr.

417, 398 P.2d 753], our Supreme Court indicated its approval of continued interrogation of arrested persons in appropriate situations where the need for such action is immediate and compelling and where none of the potential evils of inappropriate police work is presented.

Although in *People* v. *Brooks,* 234 Cal.App.2d 662 [44 Cal.Rptr. 661], the original investigation undertaken by the officers had not been directed toward any suspected violation of the narcotic laws, the situation there presented was essentially identical with that under consideration here. In the *Brooks* case, a robbery suspect was taken into custody and four marijuana cigarettes were found in his possession. In a well considered discussion at pages 668-672 of the cited decision, the court held that the conditions which invite coerced confessions with their attendant evils are not present when inquiries of the type here involved are made by the officers immediately following a lawful arrest. Hence, the exclusionary rule announced in *Dorado* should not be applied.

Further, the court noted at pages 670-671 that in addition to affording the suspect a fair opportunity to explain the presence of the contraband, the questions were "such as can properly be attributed to a commendable effort to determine the source of the contraband and possible offenses committed by others who may have sold or furnished it." See also, *People* v. *Ford,* 234 Cal.App.2d 480, 487-494 [44 Cal.Rptr. 556] (hearing denied).

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.