[Crim. No. 10870. Second Dist., Div. Three. June 28, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM GENE ANDERSON, Defendant and Appellant.

Frank Duncan, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, J.—A jury convicted defendant of first degree robbery and he appealed. Some of defendant's contentions clearly have no merit, while others might possibly be well taken, had a proper objection been made in the trial court. The briefs also discuss certain issues with respect to the admissibility of statements made by defendant which, upon a retrial, will presumably be resolved in the light of *Miranda* v. *Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694], decided June 13, 1966. Other issues mooted will probably not arise again. ▮ These problems need not detain us because of certain matters which arose in connection with the court's instructions to the jury, not raised by defendant, but which the Attorney General very properly suggests ''merit some attention.'' We must go even further and find that the situation requires a reversal, the error being so fundamental that we cannot ignore it. (*People* v. *Steele,* 237 Cal.App.2d 182 [46 Cal.Rptr. 704]; *People* v. *Ross,* 198 Cal.App.2d 723, 730 [18 Cal.Rptr. 307].)

A very brief statement of the evidence will suffice. A person whom the victim, Mrs. May Cook, a 68-year-old lady, identified as defendant entered her store for the ostensible purpose of purchasing a pair of maternity capris. He was accompanied by another man. While Mrs. Cook looked for the merchandise, the companion apparently grabbed other clothing and walked out of the store. She tried to follow him but defendant blocked her

way. He struck her on the side of the head and struck her again. She staggered and still attempted to get to the door. Then she heard the click of a knife, which she also saw and described as a switchblade. Defendant said: "If you give me any more trouble I will kill you." She could not remember anything after seeing the knife. She came to in an ambulance. It later appeared that her cash register had been rifled of $47 in cash. About $30 worth of clothes were taken.

Mrs. Cook was not particularly shaken on cross-examination and continued to maintain that she had seen a knife; she admitted, however, that she had been stunned and nervous.

Mrs. Randall, a neighbor of Mrs. Cook found her lying on the floor, bleeding. Before then she had seen a car parked near the store. She saw two persons emerge; one said to the other: "I think I will buy my wife a birthday present." A little later she saw someone put clothes in the car. This person then turned the car around and picked up "the other man." She wrote down the license number of the car.

Officer Beason arrived at the store at 3:30 p.m. He received the license number which Mrs. Randall had written down and ran a check on it. Officer Vogel then arrived and over the radio received information that the car was registered to a Dorothy Norwood at 1235 Lime. Vogel, with Sergeant McMahon then went to that address which was about a quarter of a mile from the scene of the robbery. The car was parked in front. He looked into the car and saw a clear plastic covering for clothing in the back. It resembled coverings which he had seen in the store. It later proved to bear fingerprints of defendant and one Neal.[1] A plastic coat hanger also similar to hangers which he had seen at the store was on the front steps leading to Mrs. Norwood's apartment. The officers knocked, someone opened a venetian blind before the door was opened and inside the apartment someone said: "It's the police." The door was then opened by a Mrs. Ferguson. When the officer showed her his badge she said: "Come in." There were three ladies in the apartment, as was Neal. Defendant Anderson was in the bedroom. Certain items of clothing which came from the store were found in the bedroom in plain sight. He was then arrested and searched. There is no evidence that a knife was found on his person, although the search did reveal $37 in cash.

---

[1]Neal who had been jointly charged with defendant pleaded guilty to robbery in the first degree.

 Anderson's defense consisted of an alibi. He was specifically asked by his attorney whether he had a knife or a razor and answered both questions in the negative.

In its instructions the court properly defined robbery.[2] It then gave the following two instructions: "Robbery which is perpetrated by a person or by two or more persons any one of them being armed with a dangerous or deadly weapon is robbery in the first degree. All other kinds of robbery are of the second degree. If you should find the defendant guilty of robbery, it will be your duty to determine the degree thereof and to state that degree in your verdict." Further: "If you find that the crime of robbery was committed, the robbery under the evidence in this case would be of the first degree."

The jury retired for its deliberations at 1:50 p.m. on November 18, 1964. At 2:15 p.m. the jurors returned, having, through the bailiff, requested the rereading of certain instructions, particularly those concerning the definition of the offense and the effect of being armed. The court then reread the instructions defining robbery and defining a "dangerous or deadly weapon" without, however, rereading the instruction above quoted which would have compelled a verdict of robbery in the first degree, if defendant was found guilty at all. The following colloquy then took place: THE COURT: "Does that answer the question or do you want something else? JUROR No. 12: There is just one point that I didn't quite understand, the part where you said find the Defendant guilty in the first degree, and then you went on to say if you find him guilty of robbery. THE COURT: It is the duty of the jury to determine the degree, but I have advised you that as a matter of law there could not be a finding of robbery in the second degree, because either there was a robbery committed with the use of a knife or there was no robbery at all involved in this particular case. This Defendant either participated in a robbery where a knife was used, or he didn't participate at all. JUROR No. 6: *Some of the jurors aren't sure that there was a knife used. Are you telling us that there was?* THE COURT: I am telling you that under the evidence in this case, the uncontradicted evidence, there was a knife used. The defense is not that I was there but I didn't use a knife, the defense is I wasn't there. There is no

---

[2]The colloquy between the trial court and jury set forth below suggested to us that the trial court in its instructions made it mandatory for the jury to find defendant innocent or guilty of first degree robbery. We therefore augmented the record on our own motion. (Cal. Rules of Court, rule 12 (a).)

denial that a knife was used as testified to by Mrs. Cook. Do I make myself clear? THE JURORS: Yes, sir. THE COURT: Then you may retire to the jury room."

At 2:35 p.m. the jury returned with a verdict finding defendant guilty of robbery in the first degree.

The Attorney General having brought this matter to our attention, submits that there was no error, relying on the rule that a court need not instruct on lesser offenses or degrees of crime, where the evidence warrants a conviction, if at all, only for the higher offense or degree. (*People* v. *Sutic,* 41 Cal.2d 483, 493 [261 P.2d 241]; cf. *People* v. *Carmen,* 36 Cal.2d 768, 772-773 [228 P.2d 281].)

■ It is then argued that the jury was bound to accept the uncontradicted testimony of the victim. Unfortunately we cannot agree. It is unnecessary to clutter up Shepard's by citing the multitude of cases which have held that the trier of facts may believe and accept a portion of a witness' testimony and disbelieve the remainder. (See 26 McK. Dig., Witnesses, § 296.) ■ Applying this rule to the case at hand, the jury could have found that the defendant was not armed. The victim's asserted glimpse of the knife was apparently brief and immediately followed by loss of consciousness. No knife was found on defendant's person at the time of his arrest, although the circumstances of the arrest show that defendant and Neal took no precautions whatever to hide their crime. The clues which they generously left along the trail to the apartment where they were found, almost make it seem that they were playing a friendly game of hare and hounds with the police. Nor is it permissible for us to say that the jury could not believe defendant's testimony to the effect that he did not carry a knife, although it disbelieved his alibi. (*People* v. *Jeter,* 60 Cal.2d 671, 674 [36 Cal.Rptr. 323, 388 P.2d 355]; *People* v. *Miller,* 57 Cal.2d 821, 828 [22 Cal.Rptr. 465, 372 P.2d 297].)

■ It is plain therefore, that the trial court erred in instructing the jury that if defendant was guilty, the robbery was in the first degree and erred again when it told the jury that the uncontradicted evidence showed that a knife was used.[3]

The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.

---

[3]Since the record originally before us did not include the instructions (Cal. Rules of Court, rule 33(a),) and therefore showed only by implication what the court's original instructions to the jury were, the

Attorney General's brief approaches the problem not from the point of view of the failure to instruct on second degree robbery, but as a possibly unjustified comment on the evidence. Even as such we think that it went beyond the bounds of propriety. ''The trial court, under the guise of comment, may not properly control the verdicts by a direction either directly or *impliedly* made.'' (*People* v. *Dail*, 22 Cal.2d 642, 658 [140 P.2d 828].) The court here unequivocally said—after it was brought to its attention that some jurors were not ''sure that there was a knife''—that the uncontradicted evidence showed that a knife was used. In the context of the discussion, even had the court initially instructed on second degree robbery, its statement amounted to a direction that the jury disregard such an instruction. (cf. *People* v. *Farnum*, 242 Cal.App.2d 310, 315 [51 Cal.Rptr. 327].)