[67 C.2d 9; 59 Cal.Rptr. 857, 429 P.2d 177]

[Crim. No. 10097.   In Bank.   July 10, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT GUY DOHERTY, Defendant and Appellant.

10

Robert Guy Doherty, in pro. per., and Michael E. Schwartz, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, S. Clark Moore and David N. Rakov, Deputy Attorneys General, for Plaintiff and Respondent.

TOBRINER, J.—The prosecution charged defendant with violations of Health and Safety Code sections 11500 (possession of heroin) and 11530 (possession of marijuana). The jury failed to reach a verdict on the first count but found defendant guilty of possessing marijuana. Ordering the dismissal of the first count, the court entered a judgment of conviction on the second count. Defendant appeals from this judgment.

We reverse this conviction because the trial court erroneously admitted certain of defendant's extrajudicial statements, which he gave without advice of his right to counsel and his right to remain silent. (*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] ; *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) Upon retrial, if the prosecution should again seek to use these or any other statements, the trial court must determine their admissibility in light of the rules set forth in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. For further guidance of the court upon retrial we take this occasion to reject defendant's additional argument that evidence introduced against him constituted the product of an illegal search.

According to the testimony at trial, two Los Angeles County deputy sheriffs, responding to a call from the attendant, went to a service station at 3 a.m., the morning of August 24, 1964. The attendant had called law enforcement officers because three men refused to leave the premises. The deputies saw two men, including defendant, standing near the open hood of a car parked in the service station lot. A third man was lying underneath the car, apparently repairing it.

One deputy asked defendant and his companions for identification. At that time the other deputy, Deputy Dunlop, saw defendant take a small white package out of his pocket and put it down in the engine. The deputies ordered the men to stand away from the vehicle. They then searched the engine and found the object; it was a white paper towel wrapped around a brown bag, which contained material that was later identified as marijuana and heroin. The deputies thereupon arrested defendant and his companions.

After his arrest defendant gave three statements to the authorities, each of which we discuss separately. The first of these was exculpatory; the second and third, incriminatory. The first occurred about noon on August 24 when Deputy Sheriff Berman and another deputy engaged in a "conversation" with defendant at the sheriff's Lennox Station. The deputies did not advise defendant of his right to remain silent or his right to counsel. In response to questions defendant stated that he had never seen the package containing the heroin and marijuana until after the deputies had discovered it in the engine of the car.

Deputy Berman again questioned defendant at 6:15 p.m. the next day and obtained answers to his queries which we

have characterized as defendant's second statement. The deputy did not first advise defendant of his right to counsel or his right to remain silent but told defendant that he had talked with defendant's two companions and had become convinced that defendant had possessed the package. He asked if defendant would like to make a statement; defendant replied, "I want to say something but I can't." The deputy then told defendant that if in fact he was the possessor of the package he should not allow his two companions to go to jail. Explaining in detail his reasons for believing defendant to be the guilty party, the deputy again asked if defendant wanted to make a statement.

Defendant then stated that on the previous evening a friend had approached him and asked him to hold a package; the friend told defendant, "The police are outside. I am going to get rousted." Defendant asked what was in the package; the friend replied, "Weed and pills."[1] Defendant thereupon put the package in his pocket and forgot about it until the deputies approached him at the service station. He stated that he would not have accepted the package if he had not been intoxicated. Defendant signed a written statement containing the substance of his oral remarks, which we designate as his third statement; again the officers did not advise him of his right to counsel or his right to remain silent.

We first consider defendant's contention that the admission into evidence of his incriminating second and third statements violated the constitutional rules set forth in *Escobedo* v. *Illinois, supra,* 378 U.S. 478, and *People* v. *Dorado, supra,* 62 Cal.2d 338.[2]  The Attorney General, while admitting that defendant objected to the introduction of the third statement on *Escobedo-Dorado* grounds, contends that defendant failed so to object to the admission of the second statement and that defendant is therefore precluded from raising the issue here. Since defendant's trial took place in November 1964, after the date on which the United States Supreme Court decided *Escobedo,* the Attorney General argues that a

[1]Deputy Berman, an expert in the field of narcotics, testified that "weed" means marijuana in narcotics terminology, but that the term "pills" does not refer to heroin.

[2]Defendant's trial began in November 1964, prior to the date on which the United States Supreme Court decided *Miranda* v. *Arizona, supra,* 384 U.S. 436. We therefore dispose of this appeal in accordance with the principles stated in *Escobedo* and *Dorado,* but not the additional rules set forth in *Miranda.* (*People* v. *Rollins* (1967) 65 Cal.2d 681, 691-692 [56 Cal.Rptr. 293, 423 P.2d 221].)

failure to tender such objection constitutes a waiver of the constitutional right.

We have concluded, however, that the failure of a defendant to object to the introduction of illegally obtained statements at a trial held prior to January 29, 1965, the date of this court's final *Dorado* ruling as to defendant's constitutional rights,[3] does not automatically operate as a waiver of such rights. We held in *Dorado* that the principles established by *Escobedo* could not logically be limited to statements which had been obtained after the suspect's request for counsel had been denied. A number of state and federal courts, however, had not yet fully ''perceived the implications of *Escobedo*.'' (*Johnson* v. *New Jersey* (1966) 384 U.S. 719, 733 [16 L.Ed.2d 882, 892, 86 S.Ct. 1772].) ''Defendants can no more be charged with anticipating [those implications] than can the States.'' (*O'Connor* v. *Ohio* (1967) 385 U.S. 92, 93 [17 L.Ed.2d 189, 196, 87 S.Ct. 252] (per curiam) (referring to *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]).)

In the absence of special circumstances justifying an inference of knowing and intelligent waiver of an *Escobedo-Dorado* claim,[4] we cannot assume such a waiver in a trial held before January 29, 1965. (*People* v. *Natividad* (1966) 240 Cal.App.2d 244, 246-247 [49 Cal.Rptr. 437] ; see also *People* v. *Janssen* (1965) 238 Cal.App.2d 106, 109 [47 Cal.Rptr. 453] ; *People* v. *Gastelum* (1965) 237 Cal.App.2d 205, 209 [46 Cal. Rptr. 743] ; *People* v. *Berry* (1965) 236 Cal.App.2d 460, 462 [46 Cal.Rptr. 298] ; compare *Miranda* v. *Arizona, supra,* 384 U.S. 436, 495-496 fn. 69 [16 L.Ed.2d 694, 735-736] ; *People* v. *Treloar* (1966) 64 Cal.2d 141, 143-144 [49 Cal.Rptr. 100, 410 P.2d 620] ; *In re Varnum* (1965) 63 Cal.2d 629, 631 [47 Cal. Rptr. 769, 408 P.2d 97] ; *People* v. *Hillery* (1965) 62 Cal.2d 692, 711 [44 Cal.Rptr. 30, 401 P.2d 382] ; *People* v. *Kitchens* (1956) 46 Cal.2d 260, 262-263 [294 P.2d 17].) Insofar as

[3]The United States Supreme Court decided *Escobedo* on June 22, 1964; this court rendered its first *Dorado* decision on August 31, 1964; it granted a rehearing on September 24, 1964; it handed down its final *Dorado* decision on January 29, 1965.

[4]We recognize that defense counsel in a trial held prior to January 29, 1965, might have deliberately developed on *voir dire* facts which would support the exclusion of the statements under the *Escobedo-Dorado* rule, yet omitted to object to their introduction in the hope that upon subsequent appeal the showing would serve to reverse. (Compare the facts in *People* v. *Brown* (1965) 238 Cal.App.2d 924, 928 [48 Cal.Rptr. 204].) Such a tactical maneuver should not generate a valid basis for reversal. If the People should sustain the burden of establishing the fact of such tactics, we would treat defendant's stratagem as a waiver of the objection.

previous decisions of the Courts of Appeal rest on a contrary assumption they are disapproved and not to be followed (see, e.g., *People* v. *Miller* (1966) 245 Cal.App.2d 112, 144, 145 [53 Cal.Rptr. 720] (dictum) ; *People* v. *Woods* (1966) 239 Cal.App.2d 697, 704-705 [49 Cal.Rptr. 266] ; *People* v. *Valdez* (1966) 239 Cal.App.2d 459, 465-466 [48 Cal.Rptr. 840] ; ; *People* v. *Almond* (1965) 239 Cal.App.2d 46, 49-50 [48 Cal.Rptr. 308] ; *People* v. *Brown, supra,* 238 Cal.App.2d 924, 929 ; *People* v. *Palmer* (1965) 236 Cal.App.2d 645, 650 [46 Cal.Rptr. 449] (dictum) ).

In the instant case, however, we need not determine whether special circumstances justify an inference of knowing and intelligent waiver. ▆▆ Contrary to the Attorney General's contention, the record discloses upon closer examination that defense counsel appropriately objected to the admission of both defendant's second and third statements.

Having thus determined that we may properly consider defendant's *Dorado* contention, we point out that the prosecution has not sustained its burden of showing that at the time the deputy obtained defendant's incriminating second and third statements the accusatory stage had not matured. Since the deputy did not first advise defendant of his right to counsel and his right to remain silent the trial court should have excluded the statements; its failure to do so constituted reversible error.[5]

▆▆ In *People* v. *Stewart* (1965) 62 Cal.2d 571 [43 Cal. Rptr. 206, 400 P.2d 97], affd. *sub nom. Miranda* v. *Arizona, supra,* 384 U.S. 436, we set forth the circumstances which signal the advent of the accusatory stage. "[W]hen the officers have arrested the suspect and the officers have undertaken a process of interrogations that lends itself to eliciting incriminating statements, the accusatory or critical stage has been reached. . . ." (62 Cal.2d at p. 577.) We entertain no doubt that the first of these conditions clearly appears: when defendant made his incriminating statements he had been arrested and thereafter held in custody for over 36 hours.

Turning to the second condition, we note that the record fails to disclose that the officers had not undertaken a process of interrogations that lent itself to eliciting incriminating statements. In *People* v. *Luker* (1965) 63 Cal.2d 464 [47 Cal. Rptr. 209, 407 P.2d 9], we said: "When a record, however,

[5]We therefore need not decide whether the officers obtained defendant's first statement, in which he denied any knowledge of the narcotics, after the accusatory stage had been reached.

reveals that the defendant has been arrested, has [thereafter] been questioned about the offense which occasioned the arrest, and no evidence indicates that the statements are in the nature of spontaneous disclosures, we do not presume that such a process of interrogations has not been undertaken." (63 Cal.2d at pp. 473-474.) We held in *People* v. *Stockman* (1965) 63 Cal.2d 494 [47 Cal.Rptr. 365, 407 P.2d 277] : "It may reasonably be assumed, objectively, that an interrogation which does elicit incriminating statements was conducted by the police for that purpose, at least in part, and therefore the burden should be on the prosecution to show that the statements were the result of something other than a 'process of interrogations that lends itself to eliciting incriminating statements.' " (63 Cal.2d at pp. 498-499.)

The prosecution has not sustained the described burden. Defendant, during the first interrogation, had disclaimed any knowledge of the parcel. Only after the deputy confronted defendant with the evidence against him, and after the deputy explained his reasons for concluding that defendant was the guilty possessor of the package, did defendant make the incriminating second statement. Moreover, the deputy in effect suggested that, if defendant did not confess, his innocent friends would go to jail.

Since the record does not indicate that the accusatory stage had not yet matured but nevertheless shows that defendant's second and third statements, given in the absence of the required advice, were received into evidence, we must, in accordance with our decisions, hold that error occurred. As the United States Supreme Court has noted, " [W]e will not presume that a defendant has been effectively apprised of his rights . . . on a record that does not show that any warnings have been given or that any effective alternative has been employed. Nor can a knowing and intelligent waiver of these rights be assumed on a silent record." (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 498-499 [16 L.Ed.2d 694, 737], affirming *People* v. *Stewart, supra,* 62 Cal.2d 571.)

As we shall explain, the error caused prejudice to defendant. We cannot accept the Attorney General's argument that defendant's second and third statements were merely exculpatory and hence harmless; that defendant said that he would not have accepted the parcel from his friend if he had not been intoxicated; and that, consequently, defendant did not confess to *knowing* possession of marijuana. Whether or not these statements technically constituted

confessions, their use in evidence clearly prejudiced defendant. Aside from defendant's incriminating statements, the only evidence connecting him with the crime consisted of the testimony of Deputy Dunlop that defendant had placed in the engine of the automobile a package later shown to contain marijuana. In his statements defendant admitted that he had in fact possessed the package and that he had been informed that the package contained marijuana.[6] Following the test set forth in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], we must reverse this conviction.

Upon retrial the issues of the admissibility of the defendant's first statement, which was exculpatory, as well as of the succeeding incriminatory ones, may very well arise. We have pointed out that we need not discuss the admissibility of the first statement under *Escobedo-Dorado* because the second and third statements called for reversal on that score.

We believe that if the prosecution seeks to use the first statement or any other extrajudicial statement of defendant at retrial,[7] *Johnson* v. *New Jersey, supra,* 384 U.S. 719, requires its exclusion unless the prosecution can prove that it was obtained in conformity with the standards announced in *Miranda* v. *Arizona, supra,* 384 U.S. 436. *Johnson* holds that *Miranda* governs ''cases in which the trial began after'' June 13, 1966 (p. 721 [16 L.Ed.2d p. 885]) ; it does not distinguish between original trials and retrials.

We reach this conclusion by pointing out that the United States Supreme Court in *Johnson* listed several grounds upon which the court relied in limiting the class of persons who, pursuant to the constitutional procedures set forth in *Miranda,* would obtain the protection of the Fifth Amendment privilege. We then explain that the court, in affording *Miranda* protection to defendants in *trials* beginning after June 13,

---

[6]The fact that the jury failed to reach a verdict on the charge of possessing heroin emphasizes the importance the jury attached to defendant's statements. According to defendant's statement, his friend had informed him that the package contained ''weed and pills.'' ''Pills,'' in narcotics terminology, does not mean heroin. (See fn. 1, *supra.*)

[7]We have stated that the record does not support a finding that the officers obtained defendant's second and third statements in accordance with his constitutional rights under *Escobedo* and *Dorado.* That holding would not foreclose the prosecution from attempting again to introduce these statements at a retrial; inasmuch as this trial took place prior to our *Dorado* decision the prosecution may not have perceived the necessity of adducing all evidence relevant to the statements' admissibility under *Escobedo* and *Dorado.* (See *People* v. *Green* (1965) 63 Cal.2d 561, 565 [47 Cal.Rptr. 477, 407 P.2d 653].)

1966, thereby identified as the determinative factor the need to avoid imposition of undue burdens upon the administration of justice. Such burden would take the form of retrials of those numerous defendants who had been convicted in proceedings which contained no reversible error except the failure to comply fully with the guidelines enumerated in *Miranda*. We finally explain that no such undue burden attends our instant requirement for *Miranda* protections upon retrial because we must in any event reverse the conviction on the basis of other prejudicial errors.

The court in *Johnson* recognized that *Miranda* provides "important new safeguards against the use of unreliable statements at trial. . . ." (*Johnson* v. *New Jersey, supra,* 384 U.S. 719, 730 [16 L.Ed.2d 882, 890].) Nevertheless, the court took the extraordinary step of according purely prospective effect to the newly announced constitutional standards. The court reasoned that "Law enforcement agencies fairly relied on . . . prior cases, now no longer binding, in obtaining incriminating statements during the . . . years preceding *Escobedo* and *Miranda*. . . . At the same time retroactive administration of . . . *Miranda* would seriously disrupt the administration of our criminal laws. It would require the retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards." (P. 731 [16 L.Ed.2d at p. 891].)

"All of the reasons set forth above for making . . . *Miranda* non-retroactive suggest that [*Miranda*] should apply only to trials begun after [the decision was] announced. Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test. Law enforcement officers and trial courts will have fair notice that statements taken in violation of these standards may not be used against an accused. . . . Authorities attempting to protect the privilege [against self-incrimination] have not been apprised heretofore of the specific safeguards which are now obligatory. Consequently they have adopted devices which, although below the constitutional minimum, were not intentional evasions of the requirements of the privilege. In these circumstances, *to upset all of the convictions still pending on direct appeal* which were obtained in trials preceding . . . *Miranda* would impose an unjustifiable burden on the administration of justice." (Italics added.) (384 U.S. at pp. 732-733 [16 L.Ed.2d at pp. 891, 892].)

Although the court in *Johnson* in part justified *Miranda's* prospectivity upon the reliance of law enforcement agencies on cases decided before *Miranda,* the court did not accord decisive importance to the reliance of police officers on prior decisions in planning admissible custodial interrogations. The court afforded the protection of *Miranda* "to cases in which the trial began after the date of [that] decision" (p. 721 [16 L.Ed.2d at p. 885]) ; it did *not* hold that statements obtained prior to that date by methods not fully meeting the *Miranda* standard could be used in trials beginning thereafter. Thus even if a police officer, prior to June 13, 1966, had secured a confession from a suspect fully advised of, and willing to waive, the rights enumerated in *Escobedo* and *Dorado, Johnson* would forbid use of this confession at a trial held after June 13 unless the prosecution could also prove that the defendant had been advised of the additional rights set forth in *Miranda* and had knowingly and intelligently waived those rights.

In light of the numerous considerations underlying *Miranda,* including "the necessity for procedures which assure that the individual is accorded his privilege under the Fifth Amendment to the Constitution not to be compelled to incriminate himself" (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 439 [16 L.Ed.2d 694, 704]) and the "possibility of unreliable statements in every instance of in-custody interrogation" (*Johnson* v. *New Jersey, supra,* 384 U.S. 719, 730 [16 L.Ed.2d 882, 890]), the court in *Johnson* evidently did *not* consider it unduly burdensome to require the prosecution to abstain from use of confessions obtained by methods permitted at the time of interrogation but condemned at the time of trial. (Cf. *People* v. *Rollins, supra,* 65 Cal.2d 681, 688 fn. 7.)[8] The court found an *"undue* burden on the

---

[8]The court specifically noted that officers "relied on . . . prior cases . . . in obtaining incriminating statements during the . . . years preceding . . . *Miranda*" (384 U.S. at p. 731 [16 L.Ed.2d at p. 891]) ; in light of this statement, the court's rejection of a rule which would protect such reliance regardless of the date of trial assumes special significance. Since the court noted that it had previously "applied new judicial standards in a *wholly* prospective manner" (italics added) (p. 733 [16 L.Ed.2d at p. 892]), and since it has declared certain rules inapplicable to any police conduct preceding the date of their announcement (see *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967] (right to counsel at lineups applicable only to confrontations conducted after June 12, 1967)), we cannot assume that the court in *Johnson* thought itself powerless to hold the *Miranda* decision inapplicable to pre-*Miranda* interrogations. Its refusal to do so can only signify a considered judgment that, on balance, the interests advanced in *Miranda* outweigh the

administration of justice" (italics added) (384 U.S. at p. 733 [16 L.Ed.2d at p. 892]) only in those situations in which the application of *Miranda* would require reversal of "convictions . . . which were obtained in trials preceding . . . *Miranda.*" (*Ibid.*) Thus the specific rule adopted in *Johnson* emanated from the court's expressed reluctance to "require the retrial or release of numerous prisoners" (p. 731 [16 L.Ed.2d 891]) whose trials were untainted with errors other than a lack of compliance with the later-announced *Miranda* rule.

As we have pointed out, however, we must reverse this conviction regardless of any *Miranda* violation; applying pre-*Miranda* law we must order a new trial because of errors prejudicial to the defendant. A retrial observance of contemporary constitutional requirements will not burden the administration of justice in the sense found undesirable in *Johnson.* We recognize, of course, that if the prosecution is to comply with *Miranda* upon retrial it may be constrained to forego use of extrajudicial statements elicited prior to June 13, 1966, which would have been admissible under the standards set forth in *Escobedo* and *Dorado.* This burden, however, is no greater than that caused by the prosecution's inability to use statements similarly obtained against a defendant who faces trial for the first time after June 13, 1966. Since the United States Supreme Court in setting its cutoff date did not consider that burden sufficient to outweigh the need for *Miranda* protections at *trials* beginning after June 13, 1966, we must, pursuant to *Johnson,* accord defendant those safeguards upon his second trial.

In the above holding we join other courts which have indicated that *Miranda* will apply in retrials of those defendants erroneously convicted in trials beginning before June 13, 1966. (See *Gibson* v. *United States* (5th Cir. 1966) 363 F.2d 146; *United States* ex rel. *Pierce* v. *Pinto* (D.N.J. 1966) 259 F.Supp. 729, 731, affd. per curiam (3d Cir. 1967) 374 F.2d 472; *State* v. *Brock* (1966) 101 Ariz. 168, 172 [416 P.2d 601, 605]; *State* v. *Ruiz* (1966) 49 Hawaii 504, 506 fn. 3 [421 P.2d 305, 307 fn. 3]; *State* v. *McCarther* (1966) 197 Kan. 279, 286-287 [416 P.2d 290, 296]; *Creech* v. *Commonwealth* (Ky. 1967) 412 S.W.2d 245, 247; *State* v. *Shoffner* (1966) 31 Wis.2d 412, 433 [143 N.W.2d 458, 468]; see also *People* v. *Hildabrandt* (1966) 244 Cal.App.2d 423, 433 [53 Cal.Rptr. 99]; *People* v. *Vaiza*

interest in permitting prosecutors to use confessions obtained by techniques held unconstitutional between the date of questioning and the date of trial.

(1966) 244 Cal.App.2d 121, 128-129 [52 Cal.Rptr. 733]; *People* v. *Anderson* (1966) 243 Cal.App.2d 243, 244 [52 Cal.Rptr. 201]; cf. *Moorer* v. *South Carolina* (4th Cir. 1966) 368 F.2d 458, 462; *contra, Jenkins* v. *State* (1967) —— Del. —— [230 A.2d 262]; *People* v. *Worley* (1967) 37 Ill.2d 439 [227 N.E.2d 746]; *People* v. *La Belle* (County Ct. 1967) 53 Misc.2d 111 [277 N.Y.S.2d 847].)

We cannot apply a truncated version of the Constitution to the forthcoming proceeding merely because it is a *second* trial. We cannot rationally forbid the use of statements violative of *Miranda* for defendants first tried after June 13, 1966, and sanction such use for those tried at that time after an earlier nullified proceeding.[9] Indeed Penal Code section 1180 specifically provides that ''The granting of a new trial places the parties in the same position as if no trial had been had. . . .'' (See *People* v. *Clark* (1965) 62 Cal.2d 870, 886 [44 Cal.Rptr. 784, 402 P.2d 856]; *People* v. *Murphy* (1963) 59 Cal.2d 818, 833 [31 Cal.Rptr. 306, 382 P.2d 346].) This defendant on retrial is surely entitled to no less protection of the Constitution than one simultaneously brought to trial for the first time.

For further clarification of the case upon retrial we consider and reject defendant's contention that the marijuana placed in evidence was the product of an illegal search and seizure. Although the deputies did not obtain a warrant before searching the car, we explain that the search was justified as incident to a lawful arrest. (*United States* v. *Rabinowitz* (1950) 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430]; *People* v. *Winston* (1956) 46 Cal.2d 151, 162 [293 P.2d 40].)

The deputies had arrived at the service station at 3 a.m. in response to a call from the attendant, who had informed them that defendant and his companions had refused to leave the area. Under these circumstances the officers could properly ask

---

[9] We note that the California Legislature has adopted a similar approach in determining the applicability of the Evidence Code, which became effective January 1, 1967. (Evid. Code, § 12, subd. (a).) The new evidence rules govern the conduct of trials commenced after the code's effective date, and the code specifically provides that, ''a *new* trial . . . commenced on or after January 1, 1967, shall be governed by this code.'' (Italics added.) (Evid. Code, § 12, subd. (b) (1).) The Assembly Committee on Judiciary has commented: ''[A]ny ruling made by the trial court on the admission of evidence in a trial commenced after December 31, 1966, is governed by the Evidence Code, even if a previous trial in the same action was commenced prior to that date.'' (1 Assembly Jour. 1712, 1713 (1965) (Rpt. of Assembly Committee on Judiciary on Assembly Bill No. 333).)

defendant for identification. (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Simon* (1955) 45 Cal.2d 645, 650 [290 P.2d 531].) Having observed that defendant furtively removed the small white package from his pocket and placed it in the engine, Deputy Dunlop could reasonably believe that defendant had been harboring contraband. (*People* v. *Blodgett* (1956) 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Fitch* (1961) 189 Cal.App. 2d 398, 403 [11 Cal.Rptr. 273].)

*People* v. *Blodgett, supra,* 46 Cal.2d 114, closely resembles the instant case. Blodgett and some other persons were sitting in a taxicab which was double parked in front of a hotel late at night. Police officers, who had been watching the cab, determined to investigate; they asked the occupants to get out. At this point one officer observed the defendant withdraw his hand from behind the back seat of the vehicle. The officers then searched behind the seat and found three marijuana cigarettes. In rejecting the defendant's claim that the officers had illegally obtained the marijuana cigarettes we held: "Since Officer Barker saw defendant's furtive action in getting out, he had reasonable grounds to believe that he was hiding contraband and the search of the cab was therefore reasonable." (*People* v. *Blodgett, supra,* 46 Cal.2d 114, 117.)

In the instant case, since Deputy Dunlop observed similar furtive activity he had probable cause to arrest defendant for possessing contraband; the deputy could legally search the car as incident to the arrest. That the arrest in fact followed the search does not matter since the search was "substantially contemporaneous" with the arrest. (*People* v. *Cockrell* (1965) 63 Cal.2d 659, 666-667 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Simon, supra,* 45 Cal.2d 645, 648-649.)

The judgment is reversed.

Traynor, C. J., Peters, J., and Sullivan, J., concurred.

MOSK, J.—I concur in the judgment.

This conviction must be reversed because the trial court erroneously admitted certain of defendant's extrajudicial statements given without advice of his right to counsel and his right to remain silent. (*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) I do not agree with the dictum in the majority opinion indicating

that upon retrial, if the prosecution should seek to use these statements, the trial court must determine their admissibility consistent with the rules set forth in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

In this case we have an apparent *Dorado* violation. A *fortiori,* an extrajudicial statement taken in the absence of *Dorado* admonitions will run afoul of the more embracive *Miranda* requirements. Thus, while the instant problem is relatively uncomplicated, dictum that purports to establish an unvarying rule regarding application of *Miranda* to all retrials hereafter, including cases reversed on nonconstitutional grounds (see, e.g., *People* v. *Pennington* (1967) 66 Cal.2d 508 [58 Cal.Rptr. 374, 426 P.2d 942]), is likely to constitute "an unjustifiable burden on the administration of justice" (*Johnson* v. *New Jersey* (1966) 384 U.S. 719, 733 [16 L.Ed.2d 882, 892, 86 S.Ct. 1772]).

In *Johnson* the Supreme Court held that "*Escobedo* and *Miranda* should apply only to *cases commenced* after those decisions were announced." (Italics added.) (384 U.S. at p. 733 [16 L.Ed.2d at p. 892].) It also stated elsewhere in the opinion that application was limited to "trials begun" after the decisions were announced. "Future defendants will benefit fully from our new standards," said the court (at p. 732 [16 L.Ed.2d at p. 892]).

Over and above any exercise in lexicology, it would seem that the phrase "cases commenced after those decisions" means that if proceedings against a defendant had reached the trial stage prior to the *Miranda* decision, only pre-*Miranda* rules would apply to his case notwithstanding the date of any subsequent retrial. Certainly Doherty cannot be characterized as a "future defendant."

The court in *Johnson* further emphasized that it did "not find any persuasive reason to extend *Escobedo* and *Miranda* to cases tried before those decisions were announced, even though the cases may still be on direct appeal." In the instant case, the appeal was pending when *Miranda* emerged. Thus the doctrine was not then applicable to defendant. It seems incongruous to make the new judicially adopted rule gratuitously available to the defendant at this late date in the proceedings merely because the appeal was successful on grounds other than *Miranda*. (*People* v. *La Belle* (1967) 53 Misc.2d 111 [277 N.Y.S.2d 847, 850] ; also see *Jenkins* v. *State* (1967) —— Del. —— [230 A.2d 262], in which the court

held a "new trial is not a new case; it is a continuation of the original case until the judgment is final.")

Giving a defendant whose original statements met *Escobedo* and *Dorado* tests the added protection of *Miranda* would bestow upon him the benefit of a species of retroactivity. There is no justification for this court to apply the retroactivity which *Johnson* scrupulously eschewed.

As a reason for denying retroactive application and for adopting the date the case commenced as controlling in deciding which defendants would receive the benefit of *Miranda*, the Supreme Court in *Johnson* emphasized the element of fair reliance by law enforcement agencies in their attempt to adopt devices which "although below the constitutional minimum, were not intentional evasions of the requirements of the privilege" (384 U.S. at pp. 732-733 [16 L.Ed.2d at p. 892]), and which were based on then existing law. The result was the court's observation that in these circumstances to upset all the convictions obtained in trials preceding *Escobedo* and *Miranda* would impose an unjustifiable burden on the administration of justice (*id.* at p. 733 [16 L.Ed.2d at p. 892]). It had previously "expressly declined to condemn an entire process of in-custody interrogation." (*Id.* at p. 731 [16 L.Ed.2d at p. 891].)

Subsequent to *Dorado*, California police agencies and courts fit the description of "Authorities attempting to protect the privilege" (384 U.S. at p. 732 [16 L.Ed.2d at p. 892]) but which before *Miranda* had not been "apprised heretofore of the specific safeguards which are now obligatory." (*Ibid.*) Certainly the *Dorado* rule of this court cannot be characterized as an intentional evasion of the requirements of the privilege against self-incrimination as interpreted in *Miranda*, and we should not now attribute base motives to law enforcement agencies and courts which relied on *Dorado* and failed to divine *Miranda*. Nevertheless such a melancholy conclusion is inspired by the majority's requirement that peace officers and prosecutors be prescient or, in the alternative, that admittedly guilty offenders benefit by the officers' lack of a crystal ball.

If *Miranda* must govern on retrial, the inevitable result will be release of defendants who were apprehended in the post-*Dorado* period and who confessed to authorities faithfully complying with the letter and spirit of *Dorado*. If the reliance rationale used in *Johnson* is applicable to any situation, it would seem to apply to avoid the potentially catastrophic

circumstance of confessed felons going scot-free. Indeed, the court itself expressed fear of such results when it noted that retroactive application of *Miranda* would require the ''release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards.'' (384 U.S. at p. 731 [16 L.Ed.2d at p. 891].) This court employed similar rhetoric in refusing to apply *Escobedo* retroactively. (*In re Lopez* (1965) 62 Cal.2d 368, 381 [42 Cal.Rptr. 188, 398 P.2d 380].)

The majority are fearful of ''a truncated version of the Constitution'' in forbidding the use of statements violative of *Miranda* for defendants first tried after June 13, 1966, but sanctioned for those retried at that time after a reversal of a previous conviction. Yet the majority opinion may well lead to comparable arbitrary results. Assume the case of defendants A and B, arrested in March 1966 and both tried in May 1966, both of whom gave inculpatory statements, without which conviction could not have been assured, to authorities who scrupulously complied with *Dorado* but whose admonitions fell short of *Miranda* directives. Assume there is no error in the trial of defendant A but that B's conviction is reversed because of errors wholly unrelated to constitutional provisions. When B's retrial takes place after June 13, 1966, the majority would require his statement to be excluded, and as a result B would go free whereas A suffers a penalty for the identical crime detected under identical circumstances. Certainly such a fortuitous result would be arbitrary and discriminatory.

The principal justification for the majority dictum in the instant case is the inconclusiveness of some of the language in *Johnson*. The Illinois Supreme Court resolved that dilemma in *People* v. *Worley* (1967) 37 Ill.2d 439 [227 N.E.2d 746]), in this persuasive manner:

''Since the language employed in the statement of the *Johnson* rule is inconclusive, in our opinion the intention of the Court may best be found by examining the reasons for the rule. The Court listed three factors which entered into its decision: The purpose for announcing new standards in *Miranda,* the reliance placed upon the pre-*Miranda* rules, and the seriously disruptive effect on the administration of justice of a decision that *Miranda* apply retroactively. Finding that the integrity of the fact-finding process is not as substantially improved by *Miranda* as it has been by others of its decisions, that the pre-*Miranda* rules had been relied on by law enforce-

ment officers to obtain confessions which are inadmissible in post-*Miranda* cases, and that making *Miranda* retroactive would seriously disrupt administration of our criminal laws, the Court decided against applying *Miranda* retroactively. While the disruptive effect of our criminal laws would not be as great if we follow *Gibson* [*Gibson* v. *United States* (5th Cir. 1966) 363 F.2d 146] as it would have been if the Supreme Court had held that *Miranda* applied retroactively, because retrials are not required in all pre-*Miranda* decisions in which confessions are involved, the presence of a disrupting effect similar to that with which the Court was concerned in *Johnson,* as well as a consistent thrust from each of the other two criteria, leads us to conclude that the Supreme Court did not intend that *Miranda* apply to retrials in cases such as the instant one. The pre-*Miranda* and pre-*Escobedo* rules making inadmissible coerced confession, as well as *Escobedo,* were available to protect the integrity of the fact-finding process in defendant's case, so that holding *Miranda* applicable to his retrial would effect no significant improvement therein. Law enforcement officers placed identical reliance on the pre-*Miranda* rules to obtain confessions in all cases which commenced prior to June 13, 1966, and the fact that a retrial is ordered in some of these cases in no way alters this reliance.

"Our interpretation of the Supreme Court's intent in *Johnson* is reinforced by the fact that the court there made *Miranda* applicable only to cases commencing subsequent to June 13, 1966, expressly excluding those in which direct appeals were pending at the time *Miranda* was announced. This was in direct contrast to its action in *Linkletter* v. *Walker,* 381 U.S. 618 [14 L.Ed.2d 601, 65 S.Ct. 1781], in which the court, while declining to apply *Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933], retroactively, held it applicable to all cases in which the state court decision had not become final prior to announcement of *Mapp.* Also of some significance is the statement in *Johnson* that 'Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test.' "

While I would reverse this judgment under compulsion of *Dorado,* I would advise the trial court to apply the evidentiary rules prevailing when the original trial proceedings commenced.

Burke, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Justice Lillie in the opinion prepared by her for the Court of Appeal, which opinion reads, as follows:

A jury found defendant guilty of possession of marijuana (§ 11530, Health & Saf. Code) (count II) ; inasmuch as it was unable to reach a verdict on count I (possession of heroin [§ 11500, Health & Saf. Code]), the same was dismissed. While defendant's notice of appeal states only that he "will appeal" his case, we construe the same to be a notice of appeal from the judgment based on the jury verdict.

Around 3 a.m. on August 24, 1964, Deputies Dunlop and Winter went to a Powerine station in response to a telephone call from the attendant that three persons in an automobile refused to leave the premises. When the deputies arrived they observed on the gas station lot a 1954 Mercury with the hood up. Defendant was standing to the front left side of the vehicle, a man was next to him, and a third was under the car. Defendant and the man in front were shouting down into the motor compartment. Deputy Winter asked them for identification ; the man went with Winter to the right side of the car while defendant remained in front. At this time Deputy Dunlop saw defendant "pat his rear hip pocket, and then take something out of his right trouser pocket"; defendant then "moved to the right side of the vehicle, leaned over the right fender of the vehicle, . . . and appeared to either place or pass this small bundle, white bundle, down into the motor." The bundle was round, approximately two inches in diameter, and looked "like a small bundle of white—could be paper, just rolled up." The third man was still under the car when the bundle was passed down. Immediately defendant and his companion were ordered away from the vehicle. The motor compartment of the vehicle was searched and after two or three minutes Deputy Root (who had arrived with his partner at the scene) found the package (a paper towel wrapped packet bound with a rubber band containing heroin and marijuana) ; within a few minutes thereafter defendant and his two companions were arrested.

Appellant raises two issues—the legality of the search of the vehicle ; and the admissibility of his confession.

Upon their arrival at the gasoline station, the deputies knew of the attendant's complaint that several times he had asked defendant and his two companions to leave and they had refused to do so; they had the right, indeed the duty, to

question the three persons. (*People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57] ; *People* v. *Shelton*, 60 Cal.2d 740, 741 [36 Cal.Rptr. 433, 388 P.2d 665] ; *People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852] ; *People* v. *Simon*, 45 Cal.2d 645, 650 [290 P.2d 531].) While the one deputy was attempting to determine the identity of one of the men, the other deputy observed defendant take something out of his trouser pocket, move to the right of the vehicle, lean over the right fender and drop a small round white bundle down into the motor. Inasmuch as the deputies knew that defendant had refused to leave the premises upon request and saw his furtive and suspicious conduct, they had reasonable cause to believe that he was hiding contraband (*People* v. *Fitch*, 189 Cal.App.2d 398, 403 [11 Cal.Rptr. 273] ; *People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57] ; *People* v. *Robles*, 183 Cal.App.2d 212, 215 [6 Cal.Rptr. 748] ; *People* v. *Amado*, 167 Cal.App.2d 345, 347 [334 P.2d 254] ) ; thus, the search of the engine compartment was reasonable. (*People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57] ; *People* v. *Quong*, 189 Cal.App.2d 318, 319 [11 Cal. Rptr. 170].) A search without a warrant lawfully may be conducted if reasonable and incident to a lawful arrest. (*Ker* v. *California*, 374 U.S. 23, 41 [10 L.Ed.2d 726, 83 S.Ct. 1023] ; *People* v. *Dickenson*, 210 Cal.App.2d 127, 135 [26 Cal.Rptr. 601].) There is no issue herein relative to the validity of the arrest. While it is true that the search was made prior to arrest, ''Where an arrest is lawful the search incident thereto is not unlawful merely because it precedes rather than follows the arrest. . . .'' (*People* v. *Ingle*, 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577] ; *People* v. *Duroncelay*, 48 Cal.2d 766, 771 [312 P.2d 690] ; *People* v. *Simon*, 45 Cal.2d 645, 648 [290 P.2d 531].)

Appellant contends that his confession was inadmissible because he was not advised of his constitutional rights to counsel and to remain silent.

Deputy Berman, assigned to Headquarters Detective Bureau, Narcotics Detail, was one of the investigating officers. He was in the process of trying to determine to which of the three the contraband belonged and, in the course of his investigation, talked to defendant. The conversation took place around noon on August 24, 1964, at the Sheriff's Station; defendant's statements were freely and voluntarily given. Berman asked the defendant how he came to be in the company of Ferguson and Calder; he said that he had been drinking at a bar, asked Ferguson for a ride home and on the

way engine trouble developed and they stopped at the Power-ine station. Asked what happened at the gasoline station when the deputies arrived, defendant replied that they asked for identification but he had none; asked why he walked to the right front of the motor and leaned over, defendant answered, "I just wanted to warn Duke, Mr. Ferguson, that the heat was here." Deputy Berman then showed defendant the pack-age containing the contraband; defendant said that "he had never seen the evidence prior to it being displayed to him by the officers at the scene."

Thus, the deputy continued his investigation not yet know-ing to whom the contraband belonged; in the process he talked several times to Ferguson and Calder. Then the next day (August 25) around 6:15 p.m. he had a second conversa-tion with defendant; defendant's statements were freely and voluntarily made. The officer told him that he had conversed with his two companions twice and in his "mind . . . he was the individual who possessed the evidence," he asked him "if he would like to make a statement." Defendant said, "I want to say something but I can't," whereupon the deputy said, "I can understand your position," and if he was in the same position he wouldn't say anything either. However, he told defendant that he thought it was not right, if he was the owner of the marijuana and heroin, to allow his two compan-ions to go to jail for the crime, and explained at length why he believed the narcotics belonged to him. He discussed the results of his investigation up to that point which, he said, showed the position and movements of Ferguson and Calder which eliminated them as the owners of the narcotics. Then he asked defendant "once again if he wanted to make a state-ment," whereupon defendant told him in narrative form what had occurred before his arrest—that one Morgan had approached him while he was drinking in a bar and said, " 'Hold this for me,' and handed him, . . . a package wrap-ping, a paper towel," and said, "The police are outside. I am going to get rousted"; he looked at the package and asked Morgan what was in it; Morgan told him "weed and pills"; he thought a while and when he looked up Morgan had disap-peared; he put the package in his pocket and forgot about it; he wouldn't have accepted it if "he hadn't been intoxi-cated" and when the officers arrived at the gas station he recalled having the package at which time he secreted it in the motor. Defendant denied knowledge of any heroin in the package.

Immediately thereafter Deputy Berman asked defendant if he wanted to write or sign a statement regarding the conversation; defendant said he would, at which time Berman dictated a statement pertaining to the conversation to a secretary. Concerning the writing, Deputy Berman testified, "This is the statement that I dictated regarding the conversation between defendant and myself at approximately 6 p.m., August 25, 1964." It was read and signed by defendant.

While defendant was in custody, the accusatory stage had not yet been reached; the officer was still in the process of investigating the matter for he did not know to whom the narcotic belonged. In any event, in the first conversation defendant made no damaging admissions or confessions; he made only a denial which, if believed by the jury, could have resulted in an acquittal.

The voluntary statement made by defendant in the second conversation was also made during the investigatory state; moreover, it was not the result of any process of interrogations which lent itself to eliciting incriminating statements. (*Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) The deputy still did not know to whom the contraband belonged; he had once before talked to defendant and twice to Ferguson and Calder, each denying knowledge of the narcotic. However, from all he had learned from Ferguson and Calder he concluded that defendant must have had the narcotic, and told him so. Clearly, the deputy was still investigating the case; and at this stage he gave defendant an opportunity to tell his version of what occurred. In effect, defendant declined; the deputy then explained the results of his investigation up to that time which pointed to defendant's connection with the narcotics. He asked defendant, "once more if he wanted to make a statement." The deputy's statement was not accusatory, nor did it constitute a specific inquiry; the deputy simply asked him if he wanted to say anything. This is even more general than the questions asked by the FBI agents of defendants after their arrest in *United States* v. *Konigsberg* (3d Cir. 1964) 336 F.2d 844; and by the officers of defendant in the police car after his apprehension in *People* v. *Cotter,* 63 Cal.2d 386, 390 [46 Cal.Rptr. 622, 405 P.2d 862]. The purpose of the general question was not to elicit a confession but to give defendant a chance to tell his side of the story if he wished to do so. He was affording him an opportunity which police officers normally and routinely offer to any person whom they are taking or have taken into

custody to give any explanation of his conduct he may desire to give. (*People* v. *Justiniano,* 236 Cal.App.2d 542, 544-546 [46 Cal.Rptr. 335] ; *People* v. *Luckman,* 235 Cal.App.2d 75, 78 [45 Cal.Rptr. 41] ; *People* v. *Ford,* 234 Cal.App.2d 480, 490 [44 Cal.Rptr. 556] ; *People* v. *Collin,* 232 Cal.App.2d 681, 684 [43 Cal.Rptr. 57] ; *People* v. *Cully,* 236 Cal.App.2d 769, 773 [46 Cal.Rptr. 644] ; *People* v. *Jones,* 237 Cal.App.2d 499, 504 [47 Cal.Rptr. 40] ; *People* v. *Cotter,* 63 Cal.2d 386, 393 [46 Cal.Rptr. 622, 405 P.2d 862] ; *United States* v. *Konigsberg,* 336 F.2d 844, 853.) Defendant volunteered his complicity in the narcotics activity; however had he been able to convince the deputy that he knew nothing about the contraband or had he given a legitimate explanation establishing his innocence, he would have been released. Only when his story did not convince the deputy that he knew nothing of the narcotics, was the accusatory stage reached. The deputy was trying to find out what had occurred, and he was entitled to ask questions even though defendant was in custody and a suspect. (*People* v. *Dorado,* 62 Cal.2d 338, 354 [42 Cal.Rptr. 169, 398 P.2d 361] ; *People* v. *Ford,* 234 Cal.App.2d 480, 494 [44 Cal.Rptr. 556].) The inquiry we hold to be a factual questioning of a suspect in furtherance of an investigation, and admissible.

Immediately after defendant volunteered his statement he was asked if he would sign the same reduced to writing, which he did; by this time the accusatory stage had been reached and the written statement was inadmissible. However, it contains no more than that which defendant made orally; it is cumulative, merely duplicating and reiterating the earlier statement lawfully obtained (*People* v. *Ford,* 234 Cal.App.2d 480, 494 [44 Cal.Rptr. 556]), and its admission does not require automatic reversal. (*People* v. *Washington,* 237 Cal.App.2d 59, 65 [46 Cal.Rptr. 545] ; *People* v. *Cully,* 236 Cal.App.2d 769, 778 [46 Cal.Rptr. 644] ; *People* v. *Sheridan,* 236 Cal.App.2d 667, 671 [46 Cal.Rptr. 295].) When viewed in the light of the overwhelming evidence of guilt, the written statement appears to have had but little significance and could not have resulted in prejudice to defendant. We conclude that there is no reasonable probability that the jury would have reached a result more favorable to defendant had the written statement been excluded. (Cal. Const., art. VI, § 4½; *People* v. *Jacobson,* 63 Cal.2d 319, 330-331 [46 Cal.Rptr. 515, 405 P.2d 555] ; *People* v. *Cotter,* 63 Cal.2d 386, 398 [46 Cal.Rptr. 622, 405 P.2d 862].)